UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BELEN CRUZ,

                Plaintiff,

   – against –                  **MEMORANDUM AND ORDER**

TARGET CORPORATION d/b/a TARGET STORES,    13 Civ. 4662 (NRB)

                Defendant.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Belen Cruz commenced this action against Target Corporation ("Target") in New York Supreme Court, Bronx County, seeking to hold Target responsible for a fall on spilt water at a Target store and for subsequent injury to her right knee. Target removed the action.[1]  In the motion before the Court, Target seeks summary judgment.  For the reasons set forth below, defendant's motion is denied.

---

[1] Plaintiff originally named "Target Stores, Inc. d/b/a Target" as defendant, and alleged that Defendant maintained a principal place of business in New York.  See Verified Complaint at ¶ 5.  If true, this would have prevented removal to federal court, as plaintiff herself is a New York resident. However, Defendant filed a Notice of Removal, alleging that the proper defendant is "Target Corporation d/b/a Target Stores," a Minnesota corporation with its principal place of business in Minnesota.  See Aff. in Support of Removal at ¶¶ 2-6; see also Sprint Spectrum L.P. v. AT&T Commc'ns, Inc., No. 00-0973-CV-W-5, 2001 U.S. Dist. LEXIS 25620 at *12-13 (W.D. Mo. Feb. 8, 2001) (establishing jurisdiction on the basis of diversity of citizenship between the plaintiff and the proper defendant).  Plaintiff has not contested this, and we are satisfied that this Court has diversity jurisdiction over this case.

**BACKGROUND**[2]

On August 29, 2012, plaintiff and her nephew Mohammed Mustafa walked from plaintiff's home to a nearby Target.  See Pl. Dep. 52:11-16, 55:7-56:6.  After shopping for some amount of time, plaintiff left Mustafa in order to examine a display of bagels that she (and possibly Mustafa) had passed five to ten minutes prior.  See Pl. Dep. 60:14-17; but cf. Mustafa Dep. 8:16-9:2 (recalling that plaintiff and Mustafa had not passed through the area).

These bagels were located on a set of shelves directly between the ends of two aisles.  See Pl. Dep. 56:20-57:8; Christman Decl., Ex. E ("Photograph") (photograph of shelves, as marked by plaintiff at Pl. Dep. 103:10-107:19).

Plaintiff approached the bagel display and stayed for "a minute or so," Def.'s R. 56.1 ¶ 8, before turning away empty-handed.  See Pl. Dep. 61:11-14.  As she turned and took one or two steps away from the shelves, her right foot slipped backwards on the beige tile floor.  Def.'s R. 56.1 ¶ 8; Pl.

---

[2]   This background is derived from Target's Local Rule 56.1 Statement of Material Facts ("Def.'s R. 56.1"); the Declaration of Steven M. Christman, Esq., in support of defendant's motion ("Christman Decl."), and the exhibits annexed thereto, including deposition transcripts of plaintiff ("Pl. Dep."), Jorge Ojeda ("Ojeda Dep."), and Mohammed Mustafa ("Mustafa Dep."); Pl.'s R. 56.1; and plaintiff's Affidavit in Opposition ("Pl.'s Aff.").
   Unless otherwise noted, citations to defendant's Rule 56.1 statement incorporate the corresponding paragraph(s) of plaintiff's response and, thus, refer to undisputed facts.  Where facts are allegedly disputed, we have undertaken "an assiduous review of the record," Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks omitted), and present the facts in the light most favorable to plaintiff.

Dep. 63:13-21; see also Ojeda Dep. 29:5-15 (beige tile floor). She landed "heavy" on her right knee, Pl. Dep. 65:8-10, and then sat on the floor cradling her right knee with both hands. Pl. Dep. 76:5-77:20.

While plaintiff sat on the floor, she saw a "little puddle" of clear water where she had fallen, about three or four of her hand-widths wide.  Pl. Dep. 79:11-13; see also 80:19-21, 81:18-19; cf. Ojeda Dep. 23:4-14 (describing an area of water that was not a "puddle").  She also noticed a Starbucks[3] cup with drops of clear water in it, on the second shelf from the bottom, and directly above the spilt water. See Pl. Dep. 78:15-18, 84:6-13, 85:9-13; but cf. Mustafa Dep. 9:6-14 (stating that cup was still about one-quarter full of water).  The Starbucks cup was tipped over in the direction of the shelf edge, and was set back from the edge.  See Pl. Dep 79:3-4, 82:9-16; Mustafa Dep. 9:11-10:9.  An opened stepstool, of the kind that Target employees commonly use to stock shelves, stood within a foot to the right side of the puddle. Pl. Dep. 86:8-87:4, 87:21-22; Photograph.

Nobody saw plaintiff fall, but, according to her, an unidentified bald African-American man approached plaintiff to ask if she was all right.  Pl. Dep. 65:11-12, 70:8-71:4. Further, plaintiff maintains that this gentleman did not leave

---

[3] There was a Starbucks inside this Target.  Ojeda Dep. 24:8-12.

3

to summon any Target employee, although Jorge Ojeda (a Target employee who cleaned up the spill) says that he first learned of plaintiff's accident from an African-American man.  Compare Pl. Dep. 71:18-21 and Pl. Aff. ¶ 5 with Ojeda Dep. 12:14-17, 16:10-13.  Mustafa may have also arrived soon after the accident and may have left to seek help, although neither plaintiff nor Mustafa has been consistent on this point.  Compare Pl. Aff. ¶ 4 (stating that Mustafa arrived a few minutes before a Target employee arrived) and Mustafa Dep. 13:3-9 (stating that Mustafa arrived, left to find help, and found a Target employee at the site of the accident when he returned) with Pl. Dep. 71:18-21 (suggesting that a Target employee arrived soon after the African-American gentleman approached plaintiff), Pl. Dep. 69:19-21 (estimating that Mustafa arrived five minutes after plaintiff's accident), Mustafa Dep. 7:5-6 (stating that plaintiff was alone when Mustafa arrived), and Mustafa Dep. 10:10 (stating that Mustafa found a Target employee to help).

In any case, it is undisputed that a Target employee arrived at some point.  See Pl. Dep. 75:25-76:4; Mustafa Dep. 10:10-12; Ojeda Dep. 19:6-11.  Plaintiff recognized this man as an employee by his Target nametag and his distinctive uniform of beige pants and a red shirt.  See Pl. Dep. 72:14-73:4.

According to plaintiff, this employee carried a roll of paper towels and exclaimed, "Oh my God, I was on my way, it's mine." Pl. Aff. ¶ 4; accord Pl. Dep. 71:21-72:3, 78:12-14. However, Ojeda testified that he first learned of the spill from the African-American gentleman, and that Ojeda had to leave the spill location after he arrived in order to fetch paper towels from a nearby spill station. See Ojeda Dep. 12:14-17, 22:20-24, 25:15-20. Mustafa supports Ojeda's testimony by stating that the Target employee left the spill site for paper towels. See Mustafa Dep. 14:13-24.

Upon seeing plaintiff on the ground, the Target employee made a "funny face," "like he didn't know what to do." Mustafa Dep. 10:8-14. Plaintiff asked the employee to report the accident, but the employee did not respond. See Pl. Dep. 72:3-5. The employee may have given plaintiff paper towels to clean herself with, see Pl. Dep. 89:5-22, but otherwise kept to himself and cleaned up the spill. Mustafa Dep. 14:7-12.

After plaintiff sat on the floor for about five minutes, Mustafa helped her up onto the stepstool. Pl. Dep. 69:14-21, 73:20-74:2. The Target employee did not speak further to plaintiff, Mustafa, or the African-American gentleman. Pl. Dep. 75:2-20. Five or ten minutes later, plaintiff rose to her feet, found one more item to buy, and checked out. Pl. Dep.

5

74:12-18, 91:11-14.  She then limped home with Mustafa's help. See Pl. Dep. 93:6-8; Mustafa Dep. 15:9-17.

Plaintiff put ice on her right knee and took aspirin that evening.  Pl. Dep. 90:15-18, 93:15-18, 95:16-24.  The next day, she took a taxi to an emergency room, where she was diagnosed with a sprain and received a prescription for ice, elevation, and Aleve.  Pl. Dep. 94:24-25, 95:4-5, 96:10-20, 97:14-23, 98:5-6.  She underwent physical therapy over the next several months, and had surgery on her knee in March 2013, after an MRI revealed further problems with her ligaments and tendons.  See generally Pl. Dep. 99:3-18, 119:14-139:25.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment is appropriately granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "[a] fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted).  When making this determination, "the Court is required to resolve

6

all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment" is sought, Winfield v. Trottier, 710 F.3d 49, 52 (2d Cir. 2013) (internal quotation marks omitted).  In particular, the Court must resolve all credibility determinations in favor of the non-movant.  Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545–46 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  Fed. Deposit Ins. Co. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where that burden is carried, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  Id. (citing Anderson, 477 U.S. at 249).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

In federal court, it is the plaintiff who, as the non-moving party, bears the burden of showing a genuine dispute of material fact, even though a New York state court would require

7

the <u>defendant</u> to produce affirmative evidence on the key issue of whether the defendant had adequate notice of the spill.  <u>See</u> <u>Doona v. OneSource Holdings, Inc.</u>, 680 F. Supp. 2d 394, 401 (E.D.N.Y. 2010) (granting summary judgment to the defendant in slip-and-fall case when the plaintiff presented no evidence of actual or constructive notice); <u>Tingling v. Great Atl. & Pac. Tea Co.</u>, No. 02-cv-4196, 2003 WL 22973452 (S.D.N.Y. Dec. 17, 2003); <u>cf.</u> <u>Paduano v. 686 Forest Ave., LLC</u>, 989 N.Y.S.2d 379 (App. Div. 2014) (stating New York rule).

**II.  <u>Analysis</u>**

A plaintiff in a negligence action must establish that the defendant breached a cognizable duty of care.  <u>See</u> <u>Quarles v. Columbia Sussex Corp.</u>, 997 F. Supp. 327, 330 (E.D.N.Y. 1998). In the slip-and-fall context, a storekeeper must maintain its property in a "reasonably safe condition."  <u>Naughtright v. Weiss</u>, 826 F. Supp. 2d 676, 692 (S.D.N.Y. 2011) (citing <u>Basso v. Miller</u>, 352 N.E.2d 868 (N.Y. 1976)).[4]  The storekeeper breaches this duty by (1) creating a dangerous condition; (2) failing to remedy a dangerous condition in a reasonable time after having actual notice of the condition; or (3) failing to discover and remedy a visible and apparent

---

[4] Neither party disputes that substantive New York tort law applies.  <u>See</u> <u>Quarles</u>, 997 F. Supp. at 330.

8

condition in a reasonable amount of time.[5]  See, e.g., Gonzalez v. K-Mart Corp., 585 F. Supp. 2d 501, 504–05 (S.D.N.Y. 2008); Gordon v. Am. Mus. Of Nat. History, 492 N.E.2d 774, 774–75 & n. (N.Y. 1986); Nesterenko v. Starrett City Assocs., L.P., 975 N.Y.S.2d 123, 124 (App. Div. 2d Dep't 2013); Podlaski v. Long Is. Paneling Ctr. of Centereach, Inc., 873 N.Y.S.2d 109, 110 (App. Div. 2d Dep't 2009) ("plaintiffs need not establish . . . notice . . ., since th[e] dangerous condition allegedly was created by [defendant's] agent").

Here, plaintiff meets her burden of showing that there are genuine disputes as to (1) whether a Target employee created the spill that caused plaintiff's injury, and (2) whether a Target employee had actual notice of the spill and failed to remedy it in a reasonable manner.  Plaintiff's sworn testimony is that the Target employee who cleaned the spill (1) approached her without having been summoned, (2) was already holding a roll of paper towels, and (3) exclaimed "it's mine."  Plaintiff also offers some evidence to corroborate her testimony, namely, the presence of a worker's stepstool right next to the spill.  From these facts, the reasonable inference

---

[5] These are separate legal theories.  Plaintiff can prevail on the first theory even if the employee who negligently created the condition acted reasonably in remedying the condition.  Alternatively, plaintiff can win on the second theory even if the employee did not create the condition, but failed to reasonably remedy the condition after receiving notice.

9

most favorable to plaintiff is that a Target employee caused the spill himself.

Furthermore, even if the jury did not believe plaintiff that an employee admitted to spilling the water, the jury could still credit plaintiff's testimony that an employee arrived at the scene with paper towels in hand. <u>See</u> <u>United States v. Josephberg</u>, 562 F.3d 478, 487 (2d Cir. 2009) ("the jury is free to believe part and disbelieve part of any witness's testimony"). On that assumption, the jury could infer that a Target employee had actual notice of the spill regardless of whether he caused the spill himself.

Furthermore, on the assumption of actual notice, a jury could consider the employee negligent for failing to block the spill immediately with a nearby stepstool before he left to gather cleaning supplies.

Defendant advances several arguments to avoid the straightforward conclusion that plaintiff's testimony demonstrates genuine issues of material fact. None has merit.

<u>First</u>, defendant argues that there is no evidence that a Target employee created the spill. This is incorrect. Plaintiff has consistently testified that a Target employee exclaimed "it's mine," which could reasonably be understood as an admission that he had caused the spill himself.

10

Defendant's contention that the nearby stepstool has no probative value is also incorrect.  "Evidence is relevant if . . . it has <u>any</u> tendency to make a [material] fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a) (emphasis added); <u>see</u> <u>United States v. Miller</u>, 626 F.3d 682, 692 (2010); Kenneth S. Broun, 1 McCormick on Evidence § 185 (2013 7th ed.) ("It is enough if the [evidence] could reasonably show that a fact is slightly more probable than it would appear without that evidence.").  Here, the presence of a worker's stepstool makes it somewhat more likely than otherwise that a Target employee had recently been working next to the location of the spill, which in turn makes it more likely than otherwise that an employee rather than a customer caused the spill.

The cases cited by defendant are easily distinguishable, if for no other reason than that none of them involves an employee's own admission of responsibility.  In <u>Quarles</u>, 997 F. Supp. at 327, the plaintiff had slipped on a coffee spill near where a hotel had left an unattended coffee cart for guests to use.  The district court granted summary judgment to the hotel because there was no evidence (and certainly no confession) that an employee, rather than a guest for whom the coffee was intended, had spilled the coffee.

11

In Cooper v. Pathmark Stores, Inc., 998 F. Supp. 218 (E.D.N.Y. 1998), the plaintiff relied entirely on weak circumstantial evidence (a nearby wagon of the kind used by employees) to support the conclusion that an employee had opened and spilled a bottle of fabric softener.[6] Although the court did not doubt that an employee had brought the wagon to the aisle, this fact alone was not sufficient to support an inference that an employee also created the puddle of fabric softener. The wagon was some distance from the puddle, both on-duty "truck crew" employees expressly denied knowledge of the spill, and the spilt liquid came from opened merchandise. This last fact especially tended to refute any inference that an employee caused the spill, because a customer would be more likely than an employee to open merchandise. In the present case, there is direct evidence to support plaintiff's inference (an employee allegedly admitting to the spill), and even the available circumstantial evidence is stronger. The stepstool was allegedly within a foot of the spill, and an employee is at least as likely as a customer to set a cup of water on a store shelf.

---

[6] Similarly, in Gonzalez, 585 F. Supp. 2d at 504, plaintiff "introduced no facts raising an inference that a K-Mart employee caused the hair gel [that plaintiff slipped on] to be on the floor." And in Simoes v. Target Corp., No. 11-cv-2032, 2013 U.S. Dist. LEXIS 83896 (E.D.N.Y. June 14, 2013), the plaintiff did not even allege that the defendant either caused or had actual notice of the spill. Instead, the plaintiff relied on an incorrect argument that the presence of a soda fountain implied that the store had constructive notice of the spill.

Likewise, in Cousin v. White Castle Systems, Inc., No. 06-CV-6335 (JMA), 2009 U.S. Dist. LEXIS 57079 at *17–19 (E.D.N.Y. July 9, 2009), a nearby "caution" sign was plaintiff's "only evidence" that an employee of White Castle had created a puddle.  Even assuming that an employee had erected the sign to warn against the spill, the sign alone did not show that the employee himself had created the puddle.  We agree with the holding of Cousin, that a warning sign alone does not create a reasonable inference that an employee created a puddle.[7]  Here, however, the presence of an employee's equipment merely functions to bolster plaintiff's direct evidence (namely, an admission) that an employee caused the spill.

Second, defendant argues that we should reject plaintiff's testimony as incredible.

In support of this argument, defendant offers a series of cases in which courts, in determining summary judgment, found sufficient cause to reject plaintiffs' testimony. Specifically, defendant cites Rojas v. The Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011), and Jeffreys

---

[7] While we agree entirely with this holding, we believe that the statement in Cousin, emphasized by defendant at oral argument, that "displaying such a sign is not probative of whether defendant created a puddle," 2009 U.S. Dist. LEXIS 57079 at *17–18 (emphasis added), is an overstatement.  The presence of a business's portable equipment near a spill indicates that an employee was present at the site, making it at least slightly more likely than otherwise that an employee caused a spill.  Thus, it is enough to say that the presence of equipment is probative of whether an employee caused a spill.

13

v. City of New York, 426 F.3d 549 (2d Cir. 2005). In each case, the Second Circuit affirmed holdings that the plaintiffs' uncorroborated, self-serving testimony, which squarely and inexplicably contradicted the plaintiffs' previous statements, failed to generate genuine disputes of material fact. See also Perma Research & Dev. Co. v. The Singer Co., 410 F.2d 572, 578 (2d Cir. 1969). In Rojas, the district court had found "plain inconsistencies between the facts advanced by Rojas in opposition to summary judgment and those alleged in her original and amended complaints, in sworn interrogatory responses, in portions of her deposition testimony, in her complaints before the EEOC, and in prior sworn testimony . . . at [a related] criminal trial." 660 F.3d at 105. In Jeffreys, the plaintiff's testimony that a police officer had thrown him out of a third-story window was refuted by his own statements on three separate occasions that he had jumped out of the window himself. 426 F.3d at 552.[8]

The Circuit cautioned, though, that a court may discount testimony only "in extraordinary cases," Rojas at 106, and not "if there is a plausible explanation for discrepancies."

---

[8] Defendant also cites cases such as Scott v. Harris, 550 U.S. 372 (2007), and Cousin, 2009 U.S. Dist. LEXIS 57079 at *11–15, in which video evidence was clear enough to dispose of a case on summary judgment or to refute part of a plaintiff's testimony. We are puzzled by these citations, as no such indisputable evidence has been presented here. If we are to discount plaintiff's testimony at the summary judgment stage on the record before us, the reason must come from plaintiff's self-contradictions, not from any contradictions between plaintiff's testimony and hard evidence.

14

Jeffreys at 555 n.2 (quoting Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 112 (2d Cir. 1998)) (internal quotation marks and punctuation omitted).  With this framework in mind, we examine the ways in which defendant argues plaintiff's testimony is self-contradictory.

Defendant suggests two ways in which plaintiff's critical testimony that a Target employee admitted causing (or knowing about) the spill is supposedly inconsistent with other aspects of plaintiff's testimony.  First, defendant maintains that it is implausible that a Target employee noticed the spill even though plaintiff did not notice the spill when she passed through the same "spot" or "area" minutes earlier.  Second, defendant points to plaintiff's testimony that she didn't know how the water got on the floor.

The first supposed inconsistency is no such thing.  It is entirely plausible that a Target employee noticed the spill even though plaintiff (who, after all, was looking for bagels rather than spills) did not.

As for the second supposed inconsistency, plaintiff offers a reasonable explanation: Although she heard from the Target employee that he had caused the spill, she did not know how the spill had happened.  "How?" is a different question than "Who?"

Defendant also points to material contradictions between plaintiff's testimony and the testimony of her nephew Mustafa:

15

Mustafa says that the Target employee had to leave the scene of the accident to get paper towels, while plaintiff says that the Target employee arrived with paper towels.  But, even though Mustafa is presumably a friendly witness to plaintiff, his testimony is not the kind of indisputable refutation (such as a video recording) that would allow this Court to discount plaintiff's testimony as incredible.  Even though Mustafa has no reason to hurt plaintiff's case, a jury could still believe plaintiff's testimony and disbelieve Mustafa's if, say, Mustafa appears uncertain or forgetful.

Ultimately, plaintiff provides plausible enough explanations for the minor inconsistencies that defendant identifies, and a jury would be entitled to believe plaintiff instead of her nephew.  Therefore, we must accept plaintiff's testimony as sufficient in the summary judgment context.

Third, defendant argues that it was entitled to a reasonable opportunity to clean up the spill, even if an employee actually was on notice of the spill.  This is a correct statement of the law, see, e.g., Gonzalez, 585 F. Supp. 2d at 501, 505, and defendant is also correct that—according to plaintiff's own estimate—the spill persisted for five to ten minutes at the most.  Thus, defendant would be entitled to summary judgment on the "actual notice" theory of negligence if the only way to prevent plaintiff's

16

accident had been to fetch cleaning supplies from elsewhere in the store.

However, unlike in the cases cited by defendant, the situation here allowed the Target employee (assuming he knew of the spill) to take immediate precautions without cleaning the spill at all.  A jury could reasonably find that the employee should have placed the stepstool directly on top of the spill, rather than just to the side of the spill.  Therefore, defendant is not entitled to summary judgment on the basis that defendant had too little time to remedy the spill.

We emphasize that, even if the jury believes that a Target employee had actual notice of the spill, the jury could still find that the Target employee exercised due care.  The jury could decide, for example, that the stool was close enough to the spill to prevent the risk of an accident, or that the clean-up station was so close to the spill that it was reasonable for the employee to abandon the un-covered spill while he fetched supplies, or that the spill was so small that no immediate action was warranted while the employee fetched supplies, or that the spill was so large that covering the spill with the stepstool would have been unlikely to prevent accidents in general or plaintiff's accident in particular.

Finally, defendant argues that plaintiff has not produced evidence that the spill lasted for enough time for defendant to

17

be on constructive notice. While this is accurate, plaintiff does not rely on a theory of constructive notice. Instead, as explained above, plaintiff has mustered enough evidence to survive summary judgment on her theories that a Target employee caused or had <u>actual</u> notice of the spill.

## CONCLUSION

Plaintiff has presented sufficient evidence—her own testimony and some circumstantial evidence—that a Target employee created the spilt water that caused her injury, or else that an employee had actual notice of the water and failed to take advantage of an immediately available remedy. Therefore, defendant's motion for summary judgment (ECF No. 23) is denied.[9]

The parties are directed to confer and to propose a schedule for the remaining discovery.

Dated:   New York, New York
         December 16, 2014

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[9] Neither party should understand this decision to be outcome-predictive. We cannot over-emphasize that the context of this motion requires only that we review the submissions to determine whether there are triable issues of fact.

18

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

*Counsel for Plaintiff*

David Resnick, Esq.
Ephrem J. Wertenteil, Esq.
David Resnick & Associates
450 Seventh Avenue
New York, NY 10123

*Counsel for Defendant*

Steven M. Christman, Esq.
Adam C. Calvert, Esq.
Marshall Dennehey Warner Coleman & Goggin
Wall Street Plaza
88 Pine Street
21st Floor
New York, NY 10005